United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Alberonick Valsaint, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-24143-Civ-Scola |
| | ) |
| City of Miami Beach, Florida and others, Defendants. | ) |

## Order on Motions to Dismiss

Plaintiff Alberonick Valsaint seeks to recover damages from the City of Miami Beach and three named police officers—Gustavo Blacio, David Cajuso, and Orlando Sosa Jr. (collectively, the "Officers")—and one unidentified officer—"John Doe"—for violations of his constitutional rights that he says occurred when he was wrongfully detained, or perhaps arrested, on one occasion, in 2017, and wrongfully arrested, on another, in 2018. (Am. Compl. ("Compl."), ECF No. 38.) In his ten-count complaint, Valsaint alleges liability under 42 U.S.C. § 1983 for violations of his fourth, eighth, and fourteenth amendment rights, along with municipal liability against the City. The City and the Officers have filed motions to dismiss. (City's Mot., ECF No. 41; Officers' Mot., ECF No. 42.) In those motions, the Defendants argue that Valsaint has failed to set forth facts establishing any actual underlying constitutional violations. Further, the City separately argues that Valsaint has also failed to properly allege municipal liability under § 1983. The Officers additionally maintain, in their motion, that even if a constitutional violation is set forth in the complaint, the officers are nonetheless entitled to qualified immunity. Valsaint has filed a unified response, opposing both motions (Pl.'s Resp., ECF No. 44) and the City and the Officers have, separately, replied (City's Reply, ECF No. 45; Officers' Reply, ECF No. 42). After review, the Court agrees with the Officers that the counts based on Valsaint's arrest, in October 2018, should be dismissed for failing to state a claim. It also appears, though, that the claims Valsaint bases on the September 2017 incident, involving only Blacio and the John Doe officer, are time barred. Finally, even if the claims against the John Doe officer are not time barred, it appears those claims should, in any event, be dismissed because that officer has yet to be identified and, therefore, has never been served. On the other hand, the Court agrees with the City that the sole count in the complaint against it, for municipal liability is wholly lacking and should be dismissed for failing to state a claim. In sum, then, the Court **grants, in part, and defers ruling on, in part**, the Officers' motion to dismiss (**ECF No. 42**) and **grants, in its entirety**, the City's motion to dismiss (**ECF No. 41**). As to the remaining claims, the Court orders Valsaint to show cause, on or before **November 10, 2022**, why they too should not be dismissed.

1. **Background**[1]

Valsaint describes two incidents involving the Officers in his complaint: one that occurred in September 2017 and another in October 2018. During the first incident, Valsaint, who describes himself as homeless, Haitian American, and Black (*e.g.,* Compl. ¶¶ 75, 86), was sitting near the corner of Lincoln Road and Pennsylvania Avenue one night, in September 2017 (*id.* ¶ 21). He had his backpack on his lap and describes himself as being quiet and peaceful when two officers—Blacio and the John Doe officer—approached him from behind. (*Id.*) Valsaint describes the officers as approaching him aggressively, yelling at him to turn around. (*Id.*) As Valsaint turned, he saw that the John Doe officer had his gun pointed at him. (*Id.* ¶ 22.) That officer circled Valsaint, at gunpoint, and shouted at him to open his backpack while asking him what type of weapon he was carrying. (*Id.* ¶ 24.) During the interaction, Blacio stood by, smiling. (*Id.*)

Valsaint informed the two officers he did not have a weapon in his bag, opening his bag and emptying its contents to show them. (*Id.* ¶¶ 27–28.) Valsaint also complied with Blacio's demand to show his identification, providing him with his Florida license. (*Id.* ¶¶ 28–29.) Blacio also asked Valsaint where he was from and whether he was Haitian, questioning Valsaint about whether he was legally in the United States. (*Id.* ¶ 30.) Upon Blacio's questioning Valsaint about his occupation and why he was "out here," Valsaint explained he was a student, studying computer technology and that he "was just sitting down." (*Id.*) At the same time, there was a white man, across the street sleeping, whom the officers left alone. (*Id.* ¶ 31.) When Valsaint queried the officers about why they were harassing him and not the sleeping white man, Blacio told him not to worry about the white man, telling Valsaint, "you are the one we need – you are the one that we want." (*Id.*)

After a short conversation over his radio, Blacio was told to let Valsaint go. (*Id.* ¶ 32.) At this point, the John Doe officer lowered his gun and Blacio handed Valsaint his license back, along with a small, yellow piece paper, telling Valsaint to go to social services. In all, the interaction lasted between twenty-five and thirty minutes. (*Id.* ¶ 33.)

Over a year later, in October 2018, Valsaint was in the vicinity again, this time "sitting on the ground, lying against a wall near the back alley of a building"—a clothing store—"on Lincoln Road." (*Id.* ¶ 37; Arrest Aff.,[2] Ex. A, City's

---

[1] The Court accepts the complaint's *factual* allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[2] The City attached the "Complaint/Arrest Affidavit" from the October 2018 incident to its motion to dismiss. (ECF No. 41-1.) Valsaint references or quotes from this report, signed by both Blacio and Sosa, multiple times in his complaint. (*E.g.,* Compl. ¶¶ 18, 45, 60, 81, 1st 89 (the complaint includes duplicates of paragraphs 89 through 95 so the Court differentiates them by indicating first or second), 2nd 94, 152, 158, 166.) The affidavit also goes to the heart of many of Valsaint's

Mot., ECF No. 41-1.) Valsaint had his sneakers behind his back, for support, with his socks tucked inside of them. (Compl. ¶ 37.) When Blacio and Cajuso, while on a "quality of life" detail, encountered Valsaint, it was just before 4:00 am. (*Id.* ¶¶ 39, 59; Arrest Aff. at 1.) Without even allowing him to put his shoes on, Blacio ordered Valsaint to stand and put his hands behind his back so that Blacio could cuff him, arresting him for trespassing after a warning. (Compl. ¶¶ 40, 81; Arrest Aff. at 1.) Blacio patted Valsaint down and walked him to a transport van, all while he remained shoeless. (Compl. ¶ 41.) Because the cuffs were so tight, they left Valsaint with bruises and marks. (*Id.* ¶ 43.) Valsaint also says someone, he doesn't specify whom, asked him questions about either his race or national origin. (*Id.* ¶ 42.)

The business where Valsaint was arrested, and other businesses in the City, have agreements with the City to arrest people on their properties who are trespassing. (*Id.* ¶¶ 60, 1st 89, 2nd 94, 166; Arrest Aff. at 1.) Valsaint alleges these agreements are pretextual and target homeless people and minorities who are really doing nothing more than "performing harmless, inoffensive life-sustaining conduct in public." (*E.g.*, Compl. ¶¶ 60, 1st 89, 2nd 94, 166.) In the arrest affidavit, Blacio described an "ongoing problem" at the location where he arrested Valsaint. (Arrest Aff. at 1.) Blacio also noted that the business, closed at the time, had "clearly posted" "no trespassing" signs, with letters that are two inches high. (*Id.*) Blacio further explained, in the affidavit, that "the business has a trespass authorization letter on file with the Miami Beach Police Department authorizing any police officer . . . to arrest if compliance," presumably with the no-trespassing signs, "is not met." (*Id.*)

Valsaint filed a formal complaint with the City's internal-affairs department, in August 2020, but no investigation was initiated nor were Blacio, Cajuso, or Sosa ever reprimanded. (Compl. ¶¶ 56, 63–64.) Valsaint then initiated this lawsuit, on November 24, 2021, complaining that the Defendants' conduct was unlawful and that he was targeted because of his race, national origin, and homeless status.

### 2. Legal Standard

A court considering a motion to dismiss must accept all the complaint's allegations as true, construing them in the light most favorable to the

---

claims, based on the constitutionality of his arrest in October 2018. Finally, none of the parties dispute the authenticity of the report. Accordingly, the Court considers this document, in evaluating the parties' motions to dismiss, without converting the motions into motions for summary judgment. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (finding that a "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed").

plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis

#### A. Statute of Limitations

Counts one through nine are lodged against the officer defendants; count ten, against the City. Counts one through three target just Blacio and are all based on both the 2017 as well as the 2018 incidents. Counts four through six are aimed only at the John Doe officer and are based solely on the 2017 incident. Counts seven through nine, in turn, are maintained against Cajuso and Sosa, together, and relate only to the 2018 incident. Finally, count ten, against the City, is premised on both incidents.

While § 1983 does not provide for a statute of limitations, it has been established that "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Sneed v. Pan Am. Hosp.*, 370 F. App'x 47, 49 (11th Cir. 2010) (cleaned up). The applicable statute of limitations in Florida provides for a four-year limitations period. Fla. Stat. § 95.11(3)(p) (2011); *see also Sneed*, 370 F. App'x at 47 (stating same). When a statute-of-limitations defense "is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading." *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 641 (11th Cir. 1990).

From the face of the complaint, it appears Valsaint's claims, to the extent they are based on the 2017 interaction with Blacio and the John Doe officer, are time barred: that incident took place on September 18, 2017, but Valsaint did not file his complaint until November 24, 2021—over four years later. Because this issue was raised for the first time only in reply to Valsaint's opposition, however, the Court will afford Valsaint the opportunity to rebut this affirmative defense if he can, in good faith, do so. In the meantime, however, to avoid a dismissal on the merits regarding the claims based on the 2017 event, the Court will confine its substantive analysis to those claims that are premised solely on the 2018 incident.

### B. The Officers

Valsaint's claims, in relation to his arrest on October 25, 2018, against Blacio, Cajuso, and Sosa are all premised on their violations of the Fourth, Eighth, and Fourteenth Amendments. Valsaint argues his Fourth Amendment rights were violated because all three officers "arrested Plaintiff without warning and without probable cause." (Pl.'s Resp. at 4.) As to his Eighth Amendment claims, Valsaint maintains he can sustain his claim that he was subjected to cruel and unusual punishment despite failing to allege any post-conviction wrongful conduct. And, Valsaint maintains his Fourteenth Amendment claims cannot be dismissed because he has alleged facts sufficient to show that he was treated differently from similarly situated, non-minority individuals and that he was singled out because of his race, nation of origin, and homeless status. As to all three constitutional bases, the Court finds Valsaint's claims do not survive dismissal.

As an initial matter, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009). "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003) (cleaned up). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* (cleaned up). "Officers who act within their discretionary authority are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (cleaned up). As to the second prong, "[t]he Supreme Court has emphasized that determining whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Battiste v. Sheriff of Broward Cnty.*, 261 F. App'x 199, 202 (11th Cir. 2008) (cleaned up). This inquiry turns on whether a plaintiff can establish that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, and whether the state of the law gave the officer fair warning that his actions were unconstitutional." *Id.* (cleaned up); *see also Murdock v. Cobb Cnty., Ga.*, No. 1:12-CV-01743-RWS, 2013 WL 2155465, at *9 (N.D. Ga. May 17, 2013) ("Plaintiffs bear the burden of establishing that the constitutional right at issue was clearly established at the time of the violation.").

There is no dispute here that the Officers were all acting within their discretionary authority. Accordingly, then, the Court evaluates whether Valsaint

has shown qualified immunity should not attach. In doing so, it is within the Court's discretion, in light of the circumstances of the case, to determine which of the two prongs of the qualified immunity analysis to address first as to each claim. *Pearson*, 555 U.S. at 236.

As to Cajuso and Sosa, the Court finds Valsaint's allegations fail as to all three counts against them both. Other than conclusory statements, Valsaint fails to set forth facts that support these officers' involvement in any of the alleged constitutional violations. As to the encounter in October 2018, Cajuso's alleged involvement was minimal, establishing only his presence at the scene and his role in transporting Valsaint to the police department. Sosa's involvement was even more tangential, having simply "signed off" on Blacio's arrest affidavit. Valsaint's speculation, in both his complaint and his opposition brief, that Cajuso participated "in a collaborative approach with Officer Blacio" in arresting Valsaint is insufficient to state a § 1983 claim against Cajuso. (*See, e.g.*, Pl.'s Resp. at 10 n. 2; Compl. ¶¶ 39, 150, 152.) Similarly, Valsaint's allegations that Cajuso and Sosa both knew there was no probable cause for his arrest are devoid of any factual underpinnings. Finally, Valsaint's argument that Sosa's liability stems from his supervisory position also misses the mark. Importantly, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). Instead, for supervisory liability to attach, either the supervisor must personally participate in the alleged constitutional violation or there must be a causal connection between the actions of that supervisor and the alleged constitutional deprivation. *Id*. Valsaint has not alleged facts establishing either. Based on the dearth of relevant facts, the Court dismisses counts seven through nine—directed only at Cajuso and Sosa—in their entireties.

Valsaint's allegations against Blacio, on the other hand, are more substantial but still fail to overcome Blacio's qualified immunity, as explained in more detail, below.

**(1) Valsaint fails to show that Blacio is not shielded by qualified immunity as to his claims for cruel and unusual punishment under the Eighth Amendment or excessive force under the Fourth Amendment.**

Valsaint's allegations, in count two, that Blacio subjected him to cruel and unusual punishment, miss the mark. As an initial matter, the Court notes Valsaint has captioned this count as arising under the Eighth Amendment. But, as the Officers point out, the Eighth Amendment "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). "Conditions of confinement imposed prior to conviction," conversely, "are limited instead by the due process clause of the fourteenth amendment." *Id*. Further still,

claims of mistreatment, or excessive force, during the course of an arrest, "should be analyzed under the Fourth Amendment and its reasonableness standard, rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Because the purported abuses Valsaint claims to have suffered occurred prior to his acquiring pretrial-detainee status, and certainly prior to any confinement as a result of a conviction, the Court construes his allegations, under count two, as a claim of excessive force arising under the Fourth Amendment, as opposed to the Eighth Amendment, as he has captioned it.

"To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (cleaned up). Ordinarily, "a Fourth Amendment violation depends upon <u>intentional</u> action on the part of the officer." *Id.* at 1317 (emphasis in original). That is, "the focus of the Fourth Amendment analysis is on the misuse of power, not the accidental effects of otherwise lawful government conduct." *Id.* at 1320 (cleaned up).

While there is no dispute that Valsaint has set forth facts establishing that a seizure occurred, the Court finds allegations as to the second element thoroughly lacking. The only facts that Valsaint alleges that even remotely touch on his excessive-use-of-force claim are (1) Blacio cuffed him and made him walk to the transport van in his bare feet; (2) Valsaint could barely fit in the transport van due to other arrestees; (3) Blacio ignored Valsaint's complaint that the handcuffs were too tight; (4) the handcuffs left "bruises and marks"; and (5) the transport van did not take Valsaint directly to the station but instead continued driving around the City. Valsaint fails to convince that these allegations amount to the violation of a clearly established constitutional right: at most Valsaint has shown he suffered de minimis injuries as a result of an otherwise unremarkable arrest that reveals no evidence of a concrete intent to harm.

Valsaint's reliance on *Pottinger v. City of Miami* is misplaced. 810 F. Supp. 1551 (S.D. Fla. 1992). In that case, in relevant part, the plaintiff class members—all homeless—challenged an ordinance that, as applied to them, "punish[ed] them for something for which they may not be convicted under the eighth amendment—sleeping, eating and other innocent conduct." *Id.* at 1565. *Pottinger* is inapplicable for many reasons, not the least of which is that the ordinance at issue here targets trespassing on private property, as opposed to loitering on public property. Accordingly, to the extent Valsaint claims that his "circumstances are identical to th[e] plaintiffs in *Pottinger*," he is wrong. Furthermore, the part of *Pottinger* that Valsaint relies on is directed towards the Eighth Amendment, not the Fourth Amendment.

### (2) Valsaint fails to show that Blacio is not shielded by qualified immunity as to his claim under the Fourteenth Amendment's Equal Protection Clause.

Valsaint's allegations regarding the Equal Protection Clause are also lacking. According to Valsaint, he was targeted for arrest because of his race, national origin, and homelessness status. (*E.g.*, Compl. ¶ 99.)

To the extent Valsaint's claim hinges on his belonging to a protected class, he must set forth facts establishing that "individuals of a different race [or nationality] could have been . . . arrested for the same crime, but were not." *Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1224 (M.D. Ala. 2006). Or, to the extent Valsaint's equal-protection count hinges on a "class of one" claim, he "must show that (1) he has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment." *Watkins v. Cent. Broward Reg'l Park*, 799 F. App'x 659, 664 (11th Cir. 2020). As to Blacio's 2018 encounter with Valsaint, the complaint is replete with generalities and unsupported conclusions of disparate treatment, but is wholly devoid of any facts that could come even close to establishing an equal-protection claim: Valsaint fails to alleges facts establishing either Blacio's racial animus or discriminatory conduct. Accordingly, the Court finds Blacio shielded by qualified immunity in the face of Valsaint's claim for violations of his equal-protection rights, at least as relates to the 2018 incident.

### (3) Valsaint fails to show that Blacio is not shielded by qualified immunity as to his Fourth Amendment false arrest claim.

As to the October 2018 incident, Valsaint maintains he was subjected to arrest without probable cause. He says Blacio's charge of trespassing on private property, after a warning, was mere pretext, and that, in actuality, Valsaint was merely sitting down, peacefully, in a public place, when he was unlawfully arrested. (Compl. ¶¶ 79, 81.) The Court finds Valsaint's showing lacking and inadequate to overcome Blacio's qualified immunity regarding Valsaint's unlawful-arrest claim.

In a wrongful-arrest claim, an officer will be shielded from liability "if there was arguable probable cause, i.e., if a reasonable police officer, knowing what [the defendant officer] knew, could have believed there was probable cause for the warrantless arrest." *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). Here, Valsaint alleges he was sitting or lying against a wall, barefoot, near the back alley of a building on Lincoln Road. (Compl. ¶ 37.) According to the arrest affidavit, which the Court considers in evaluating the motion-to-dismiss briefing (as explained above, in note 1), the encounter occurred at 3:52 in the morning, when the business inside the building was closed. (Arrest Aff. at 1.) The affidavit also describes a "clearly posted . . . 'NO TRESPASSING' sign," with two-inch high

lettering. (*Id.*) Continuing, the affidavit explains that the business has a "trespass authorization letter on file with the Miami Beach police department authorizing any police officer . . . to arrest if compliance is not met." (*Id.*) Although Valsaint does not dispute the affidavit's description of where he was, he insists that the area was public, not private, space. (*E.g.*, Compl. ¶ 38.) Valsaint also does not dispute the affidavit's description of the no-trespassing sign, but nonetheless maintains Blacio arrested him "without any verbal or written warnings" (*id.* ¶ 40) and argues in briefing that "there was no *conspicuous* trespass sign for [him] to heed." (Pl.'s Resp. at 11 (emphasis added).) Importantly, Valsaint acknowledges at least some signage in the area but simply notes that it is not in compliance with Florida law because the sign did not specify the name of the business that owned the property or that the actual spot where Valsaint was located was in a "trespass zone." (Pl.'s Resp. at 12.)

Notably, missing from the complaint, and even Valsaint's response brief, are any facts that would show Blacio lacked arguable probable cause to arrest Valsaint. Reading the facts in the light most favorable to Valsaint, Blacio encountered Valsaint, barefoot and lying against a wall, in an alley behind Lincoln Road in Miami Beach, at nearly four o'clock in the morning. Blacio perceived what he described as a "clearly posted" no-trespassing sign that he believed was associated with the building and the area where Valsaint was located. Blacio also was aware of a letter the business had on file that he believed authorized him to arrest anyone who was not in compliance with the sign's warning. Even if the spot where Valsaint was lying was actually public property; and even if the sign was not actually conspicuous or in compliance with the Florida statute sections he cites, Valsaint fails to show that a reasonable police officer, knowing what Blacio knew, could not have believed there was probable cause to make the arrest. That is, even though Blacio may have been mistaken, Valsaint alleges no *facts*, as opposed to his conjecture about Blacio's true motives, that Blacio acted unreasonably in effecting the arrest. Accordingly, Blacio is entitled to be shielded from Valsaint's unlawful arrest claim, as to the 2018 incident, set forth in count one.

### C. The City

In count ten, Valsaint seeks to hold the City liable for his wrongful detention, arrest, and treatment by the Officers. He argues that the City has "continuously affirmed or willfully ignored" its officers' constitutional violations. In support, he points to what he describes as the City's "official" quality-of-life policy and the "pre-textual agreements" the City has with local businesses to arrest trespassers. (Pl.'s Resp. at 44.) And while he concedes he has not alleged a pattern of events establishing the City's deliberate indifference through an unofficial policy, he argues he has identified a need to train that is so plainly

obvious that he need not set forth such a pattern in this case. The Court disagrees.

"[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). To establish such a policy, a plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice . . . shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Valsaint fails to allege facts from which the Court could infer a municipal custom or policy that constituted deliberate indifference to the violation of his constitutional rights. Instead, he relies on purely conclusory and unsupported generalities, referencing things like the City's "long history of arresting and/or rounding up individuals . . . who are not engaging criminal activity" (Compl. ¶ 50); officers, including the Defendants, who "target and harass peaceful, law abiding individuals" (*id.* ¶ 51); the City's failure to implement or enforce "polices, procedures and training that complied with industry standards and the law to ensure that the civil rights of individuals were not violated by law enforcement officers" (*id.* ¶52); the City's knowledge that its "officers routinely arrested and targeted minorit[ies] and [the] homeless," making unlawful stops and arrests (*id.* ¶¶ 53–54); deficiencies in training regarding "racial profiling, equal protection, and non-discrimination" (*id.* ¶ 57); a "custom, pattern, practice, or policy that the City and MBPD . . . follow[ed] to target minorities and [the] homeless . . . who are publicly performing harmless, inoffensive life-sustaining conduct" (*id.* ¶ 58); and pretextual "'quality of life' details" and agreements with businesses which were used to unlawfully arrest homeless people who were not engaged in any criminal activity (*id.* ¶¶ 59–60). To begin with, these allegations, either alone or together, do not come anywhere near qualifying as "an official promulgated policy." *See Perez v. Metro. Dade Cnty.*, No. 06-20341-CIV, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) (Moreno, J.) ("[T]he simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (cleaned up).

Nor do they constitute facts showing an unofficial custom or policy. To proceed on the basis of an unofficial custom or policy, Valsaint must allege facts demonstrating "repeated acts of a final policymaker for the [municipality]." *Grech*, 335 F.3d at 1329. The alleged acts must establish "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)

(cleaned up). Valsaint does not dispute that his complaint fails to set forth repeated acts that would establish a widespread practice. Nor does he disagree that he has failed to identify a final policymaker: indeed, his complaint does not make a single reference to any policymaking authority who "openly or tacitly approved of the alleged actions of the police officers, much less final policymakers." *Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (King, J.).

Instead, Valsaint points to caselaw that he says allows him to proceed with his claim against the City "without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64 (2011). This kind of "single-incident liability" was first conceived of by the United States Supreme Court in *Canton v. Harris* where the Court posed the hypothetical example of a city that arms its police force with guns and sends them out into the public to capture fleeing felons without training as to the constitutional bounds of using deadly force. 489 U.S. 378, 390 n. 10 (1989). Through that example, the Court has come to recognize that, "in a narrow range of circumstances," a city's failure to train "could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 63–4. The Court is not convinced: Valsaint fails to explain how the hypothetical failure to train officers regarding the constitutional bounds of the use-of-deadly force is analogous to the facts here. Instead, Valsaint simply assumes that, because the City's officers purportedly targeted and detained Valsaint just based on his homelessness status, race, and nation of origin, they must not have been properly trained. (Compl. ¶¶ 187–88.) Valsaint then extrapolates, without any connecting facts, that because the Defendant Officers were not properly trained, the City has failed to adequately train any of its officers. (*Id.* ¶ 190–91.) Notably, Valsaint focuses on the adequacy of the City's training of its officers, as opposed to a lack of training at all. This readily distinguishes Valsaint's case from the circumstances envisioned in *Canton. See Rebalko v. Coral Springs*, 552 F. Supp. 3d 1285, 1326 (S.D. Fla. Nov. 3, 2020) (Altman, J.) (recognizing "the 'so obvious' path is generally reserved for those cases in which the government actor was provided *no training whatsoever*") (cleaned up) (emphasis in original). Additionally, Valsaint fails to set forth any facts explaining exactly "*how* or *why* the City's training was insufficient—an omission that renders [his] failure-to-train claim conclusory and, in material respects, implausible." *Id.*

In sum, Valsaint has failed to allege sufficient facts to survive dismissal on his *Monell* claim.

### 4. Conclusion

As set forth above, the Court **grants, in part, and defers ruling on, in part,** the Officers' motion to dismiss (**ECF Nos. 42**) and **grants, in its entirety**,

the City's motion to dismiss (**ECF No. 41**). The dismissed claims, against the City (count ten) and against the Officers as to the 2018 incident (part of counts one, two, and three, plus counts seven, eight, and nine, in their entireties), are dismissed with prejudice, based on Valsaint's failure to state a claim. Additionally, the Court denies Valsaint's cursory request for leave to amend his complaint, inserted as an afterthought, in the last sentence of his eighteen-page response to the Defendants' motions (Pl.'s Resp. at 18): the request is procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up). Further, Valsaint has already amended his complaint once, with the assistance of counsel, and, in any event, the deadline to amend the pleadings has long since passed.

As to the statute of limitations issues, the Court orders Valsaint to show cause, on or before **November 14, 2022**, why the remaining claims, associated with the 2017 event, should not be dismissed as time barred. To the extent Valsaint seeks, *in good faith*, to pursue those claims, he must then also show cause, by the same date, why his claims against the John Doe officer should not also be dismissed: Valsaint has failed to identify or even describe this fictitious defendant nor, obviously, has this defendant been served, with the time to do so having long since passed.

In the meantime, the Court **stays** the remaining deadlines in this case, directing the Clerk to **administratively close** this case. Accordingly, the Court **denies as moot** (**ECF No. 52**) the Officers' unopposed motion for an extension of various pretrial deadlines and to reset the trial date. If any of the remaining claims are determined to survive dismissal, the Court will reopen this case and enter an amended scheduling order.

**Done and ordered**, in chambers at Miami, Florida, on November 2, 2022.

_____
Robert N. Scola, Jr.
United States District Judge